1
2
3
4                    UNITED STATES DISTRICT COURT
5                  EASTERN DISTRICT OF WASHINGTON
6    UNITED STATES OF AMERICA,
7                           Plaintiff,          No.    1:14-CR-2074-WFN-1
8        -vs-                                    ORDER DENYING MOTIONS
                                                 TO DISMISS AND FOR NEW TRIAL
9    CHARLES PETE EYLE,
10                          Defendant.
11

12        Pending before the Court are Defendant's two Motions alleging defects with the
13   District's jury selection process:  Defendant's Motion to Dismiss Based Upon Violations of
14   the Sixth Amendment and the Jury Selection and Service Act of 1968 (ECF No. 67) and
15   Motion for New Trial Under FRCrP33 (ECF No. 80).  The Court held an evidentiary
16   hearing on April 11, 2016, and heard testimony from Henry Greer, Jessica Harmon, and
17   Jeffrey Martin.  The Defendant participated by videoconference but was represented in
18   person by Alison Guernsey; Assistant United States Attorney Thomas Hanlon represented
19   the Government.  The Court has reviewed the file and Defendant's Motions and is fully
20   informed.

21                              **BACKGROUND**
22        The "Amended Plan for the Random Selection of Grand and Petit Jurors," governs
23   jury selection in the Eastern District of Washington. The Amended Plan divides the
24   District into two divisions, Jury Divisions "A" and "B," which are mostly separated by
25   county. Division "B," relevant to this case, consists of certain zip codes in Adams County,
26   as well the complete counties of Benton, Franklin, Kittitas, Klickitat, Walla Walla, and
27   Yakima.  Every two years the District gets a list of about 1.2 million names, by county, of
28   registered voters and holders of driver's licenses and state identification cards with the

ORDER - 1

duplications removed from the State of Washington.  For Adams County, the names are also divided by zip code.  Names are randomly selected by county proportional to voter turnout in the last election to create the master wheel for Division B containing 55,000 potential jurors.

From the master wheel the Jury Administrator uses the national Jury Management System to randomly draw 20,000 names for each jury division to populate the qualified list.  She sends a jury qualification questionnaire to each of the randomly selected potential jurors.  Jurors must return the questionnaires so the Jury Administrator can determine whether they are qualified.  If a juror fails to respond, the Jury Administrator reaches out to the non-responding juror and provides another questionnaire for his or her completion. If the non-responding juror still does not complete the questionnaire within a certain period of time, the Jury Administrator conducts a supplemental draw and issues a questionnaire to a newly-selected prospective juror in the same zip code. If the questionnaire from the newly selected juror similarly goes unanswered, the Jury Administrator mails another questionnaire.  If the second attempt proves equally fruitless, there is no third attempt within this zip code.   The Jury Administrator processes qualification questionnaires as they come in so the number of potential jurors on the qualified list increases over time.

Jurors are qualified unless they are not a US citizen; can't read, speak, or understand the English language; have not resided in the district for a year; have pending criminal charges; or are a felon whose rights have not been restored.  Those potential jurors who qualify and have not been excused based on undue hardship become qualified jurors. When jurors are needed for trial, the Jury Administrator uses the Jury Management System to randomly draw the panel of potential jurors from the qualified list.

Defense expert Jeffrey Martin compared the percentage of Hispanics on the 2015 - 2017 qualified list to the percentage of Hispanics in the population.  He concluded Hispanics are under-represented on the qualified list.  Mr. Martin acknowledged that the AO report indicates that the Hispanic percentage of the Jury Eligible Population in

Division B is 14.90%. However, he notes that this number is based on the American Community Survey from 2010 and omits Adams County. Mr. Martin believes the more accurate percentage is found in the American Community Survey from 2014, which indicates that the Hispanic percentage of the Jury Eligible Population is 17.96%. He acknowledged that of those jurors on the Master Wheel who self-identified race and ethnicity, 14.85% indicated they are Hispanic. About 12% of the qualified jurors on the 2015 - 2017 Qualified Wheel self-identified as Hispanic. He opined that three factors, listed in order of most to least impact, caused the proportion of Hispanic potential jurors to drop: (1) non-responses/undeliverable mail disproportionately impacted Yakima County; (2) the "proration" caused by the selection procedure based on voter turnout rather than on the registered voters; and (3) the disqualification process. According to Mr. Martin, these factors taken together disparately impacted Hispanic jurors on the master wheel. Mr. Martin did not address the number of Hispanic jurors on the panel subject to *voir dire*. He indicated that his concern was the "loss of Hispanics" in the qualified wheel. Defendant argues that based on this disparate impact, the jury impaneled in Defendant's case did not represent a fair cross-section of the community in violation of the Sixth Amendment and Jury Selection Service Act of 1968.

## DISCUSSION

The Sixth Amendment and the Jury Selection and Service Act afford criminal defendants the right to be tried by an impartial jury selected at random from a fair cross-section of the community. 28 U.S.C. § 1861 *et seq.*; *Berghuis v. Smith*, 559 U.S. 314, 319 (2010). Each district court is required to formulate its own written plan for jury selection to help ensure that the jury is "selected at random from a fair cross section of the community," all citizens "have the opportunity to be considered for service," and no citizen is "excluded from service . . . on account" of a protected characteristic. 28 U.S.C. §§ 1861-63.

In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must demonstrate the following:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri*, 439 U.S. 357, 364 (1979). Once the defendant has established his prima facie case, the burden then shifts to the government to demonstrate "a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process . . . that result in the disproportionate exclusion of a distinctive group." *Id.* at 367-38.

The parties agree that Defendant unquestionably satisfied the first requirement of the *Duren* prima facie case because Hispanics comprise a distinctive group in the community. *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir. 2014) ("Hispanics are distinctive groups in the community."); *see Duren*, 439 U.S. at 364 (finding women "are sufficiently numerous and distinct from men" so that "if they are systematically eliminated from jury panels, the Sixth Amendment's fair-cross-section requirement cannot be satisfied" (quoting *Taylor v. Louisiana*, 419 U.S. 522, 531 (1975)).

Defendant has not satisfied the second *Duren* requirement because he cannot show that "the jury pool does not adequately represent the distinctive group in relation to the number of such persons in the community." *United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir.) *cert. denied*, 135 S. Ct. 709, 190 L. Ed. 2d 445 (2014). The Ninth Circuit recently rejected the "absolute disparity" test as the *exclusive* analytical measure for the second *Duren* prong, and instead directed district courts to employ an appropriate analytical tool based on the circumstances at hand. *Id.* at 1162-63. However, in the situation where the distinctive group is neither a very large nor very small percentage of the population, the absolute disparity test is an appropriate vehicle for measuring disparity. *Id.* at 1161- 62. While the Court recognizes that recent cases ask district courts to perform a nuanced analysis, the Ninth Circuit has found that a 7.7% absolute disparity is constitutionally permissible. *See United States v. Esquivel,* 88 F.3d 722 (1996). Latinos

constitute between 14.85% - 17.96% (depending on the source) of the geographically relevant voting population, but compromised only about 12% of the qualified jury pool. As applied here, the absolute disparity of Latinos is 2.85% based on the AO-12 up to 5.96% based on the more recent 2014 American Community Survey. Though the Jury Administrator must rely on the data supplied by the AO for statistical purposes internally, even using the more recent demographic information, the absolute disparity between the jury eligible population and the qualified list is minimal and not constitutionally problematic.

Similarly, Defendant cannot demonstrate that the underrepresentation "is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364. To be systematic, the underrepresentation must be "due to the *system* by which juries were selected." *Id.* at 367. First, Defendant has failed to present any evidence, beyond pure speculation, that any underrepresentation is due to the Eastern District's jury selection system. The largest factor identified by Mr. Martin, nonresponses/undeliverable mail, is not a failure of the system but of those potential jurors who fail to respond. An effort is made to ensure people respond, but the jury plan need not require that the Jury Administrator call each of the over 7,000 non-responders to ask them to complete their questionnaires. A second mailing is sufficient. As for undeliverable mail, reliance on the postal system and voters to update the addresses is not unreasonable. Defendant lays fault in the District's reliance on voter turnout rather than voter registration. The District's policy is founded upon statutory guidance in 28 U.S.C. § 1863(b)(3). Though the District has the option of switching to voter registration, the reliance on a statutorily permissible system where there is a low absolute disparity is not unreasonable.

Further, the numbers relied upon by the Defendant omit the proportion of the Master Wheel that is Hispanic. Without this number it is impossible to say whether it is reliance on the voter turnout records or the qualification process that results in a lower representation of Hispanics on the qualified list than is found in the general population. There are legitimate factors, including English language skills that may disproportionately

ORDER - 5

affect the Hispanic population, but are not the result of a policy or procedure created by the District.

Defendant has not made a prima facie case using the *Duren* factors. There is no evidence before this Court that Latinos are underrepresented on the qualified list or that the District policy systematically excludes any group. For all the foregoing reasons, the Defendant's Motions are denied. Accordingly,

**IT IS ORDERED** that:

1. Defendant's Motion to Dismiss Based Upon Violations of the Sixth Amendment and the Jury Selection and Service Act of 1968, filed November 22, 2015, **ECF No. 67**, is **DENIED**.

2. Defendant's Motion for New Trial, filed November 24, 2015, **ECF No. 80**, is **DENIED**.

3. The sentencing hearing set for **May 3, 2016, at 10:00 a.m., in Yakima**, Washington is **CONFIRMED**.

The District Court Executive is directed to file this Order and provide copies to counsel **AND TO** United States Probation Officer Jennifer Dykstra.

**DATED** this 19th day of April, 2016.


                                            s/ Wm. Fremming Nielsen
                                        WM. FREMMING NIELSEN
04-13-16                        SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 6